**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DAVID DUNCAN, | ) | Case No. 1:25-cv-02301 |
| | ) | |
| Plaintiff, | ) | Judge J. Philip Calabrese |
| | ) | |
| v. | ) | Magistrate Judge |
| | ) | Jennifer Dowdell Armstrong |
| CITY OF MAPLE HEIGHTS, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**OPINION AND ORDER**

Plaintiff David Duncan brings claims against the City of Maple Heights, Cuyahoga County, Officer Bernard Fronzaglio, Sergeant Deann Frazier, and Assistant Prosecuting Attorneys John Kosko and Sasha Brooks for arresting and prosecuting him without cause and in violation of his civil rights. Defendants move to dismiss his claims. For the reasons stated below, the Court **GRANTS IN PART** Defendants' motion.

**STATEMENT OF THE FACTS**

On Defendants' motions to dismiss, the complaint alleges the following facts, which the Court accepts as true and construes in the light most favorable to Plaintiff, as it must in the present procedural posture.

Plaintiff David Duncan is a Florida resident who has a five-year-old son with Maria Bush. (ECF No. 11, ¶¶ 1–2, PageID #53.) At the end of 2023, Bush moved out of Florida and took their son with her. (*Id.*, ¶ 2, PageID #53.) In the ensuing months, Mr. Duncan and Bush remained in contact regarding the child's well-being. (*Id.*,

¶¶ 4–5, PageID #53.) At some point, they agreed that Mr. Duncan would pick up their son in Ohio and bring him back to Florida. (*Id.*, ¶¶ 4–5, PageID #53.)

On July 8, 2024, Mr. Duncan picked up his son from the child's grandmother's house in Ohio. (*Id.*, ¶ 6, PageID #53.) That same day, Officer Bernard Fronzaglio of the Maple Heights, Ohio police department took a statement from Maria Bush regarding Mr. Duncan's possession of their child. (*Id.*, ¶ 7, PageID #54.) The complaint contains no allegations regarding the content of that statement. Subsequently, Officer Fronzaglio and Sergeant Deann Frazier spoke with Mr. Duncan. (*Id.*; ECF No. 18, ¶ 2, PageID #130.) Mr. Duncan assured them that he had legal custody of his son and that the child was properly a resident of Florida. (ECF No. 11, ¶ 7, PageID #54.)

After receiving these statements, one of the officers consulted with John Kosko, an assistant prosecuting attorney in Cuyahoga County. (ECF No. 11, ¶ 8, PageID #54; ECF No. 18, ¶ 3, PageID #130–31.) Mr. Kosko advised charging Mr. Duncan with kidnapping under Section 2905.01 of the Ohio Revised Code. (ECF No. 11, ¶ 9, PageID #54.) Sergeant Frazier and Officer Fronzaglio followed this advice, executing probable cause affidavits and obtaining a warrant to arrest Mr. Duncan for felony kidnapping. (ECF No. 11, ¶¶ 11–12, PageID #54–55.) Sasha Brooks, another assistant prosecuting attorney, signed the request for the warrant. (*Id.*, ¶ 13, PageID #55; ECF No. 18, ¶ 6, PageID #131.)

On July 11, 2024, Mr. Duncan was arrested in Florida on this Ohio warrant. (ECF No. 11, ¶ 16, PageID #55.) On July 13, 2024, while he was in a Florida jail

awaiting extradition, Maria Bush's mother and sister visited an Ohio police department to report that Mr. Duncan was wrongly charged. (*Id.*, ¶ 17, PageID #55.) Specifically, they indicated that Mr. Duncan had legal custody of the child and picked him up after obtaining Ms. Bush's permission to do so. (*Id.*)

Despite their statement, Mr. Duncan remained in custody. (*Id.*, ¶ 18, PageID #55.) On August 9, 2024, Mr. Duncan was extradited to Ohio, where he remained in the Cuyahoga County jail until he posted bond on August 14, 2024. (*Id.*) On October 28, 2024, the charges against him were dismissed. (*Id.*, ¶ 19, PageID #56.)

## STATEMENT OF THE CASE

On October 27, 2025, Plaintiff filed this lawsuit. (ECF No. 1.) On December 16, 2025, he filed a first amended complaint, adding additional parties and a new claim. (ECF No. 11.) In his amended complaint, Plaintiff names as Defendants the City of Maple Heights, Cuyahoga County, Bernard Fronzaglio, Deann Frazier, John Kosko, Sasha Brooks, and ten "Doe Defendants . . . individuals currently unknown to Plaintiff but who may have liability for the conduct described in this Complaint." (*Id.*, ¶ 28, PageID #57.)

Against these Defendants, Plaintiff asserts several federal claims under 42 U.S.C. Section 1983: false arrest (Count I), malicious prosecution (Count II), fabrication of evidence (Count III), *Monell* liability against Defendants City of Maple Heights and Cuyahoga County (Count IV), and deliberate indifference (Count V). Under Ohio law, he asserts claims for false arrest (Count VI), malicious prosecution

(Count VII), intentional infliction of emotional distress (Count VIII), and abuse of process (Count IX).

Defendants move to dismiss. (ECF No. 17.) They contend that several of Plaintiff's claims fail because probable cause supports his arrest. (*Id.*, PageID #111–15.) Additionally, they argue that several claims are insufficiently pled and that the named Defendants have immunity. (*Id.* PageID #115-27.) As for Plaintiff's State-law claim for false arrest, it is untimely under the applicable statute of limitations. (*Id.*, PageID #121.)

Plaintiff opposes this motion but concedes that his State-law claim for false arrest is untimely and ripe for dismissal. (ECF No. 21, PageID #153.)

**ANALYSIS**

Under Rule 12(b)(6), a court may dismiss a complaint if it fails to state a claim on which a court may grant relief. Fed. R. Civ. P. 12(b)(6). A motion under Rule 12(b)(6) tests "the plaintiff's cause of action as stated in the complaint" and is "not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958-59 (6th Cir. 2005). A complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible where "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). To survive a motion to

dismiss, a complaint must "raise a right to relief above the speculative level" into the "realm of plausible liability." *Twombly*, 550 U.S. at 555, 557 n.5.

On a motion to dismiss, the Court construes factual allegations in the light most favorable to the plaintiff, accepts them as true, and draws all reasonable inferences in the plaintiff's favor. *Wilburn v. United States*, 616 F. App'x 848, 852 (6th Cir. 2015) (citing *DirecTV, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir. 2007)). But a pleading must offer more than mere "labels and conclusions," and "a formulaic recitation of the elements of a cause of action will not do." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Nor is a court required to accept "[c]onclusory allegations or legal conclusions masquerading as factual allegations." *Eidson v. Tennessee Dep't of Child.'s Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (citing *Twombly*, 550 U.S. at 544).

Therefore, a court must distinguish between "well-pled factual allegations," which must be treated as true, and "naked assertions," which need not be. *Iqbal*, 556 U.S. at 678 (cleaned up); *see also*, *e.g.*, *Center for Bio-Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 375 (6th Cir. 2011) (determining that because some of the plaintiff's factual allegations were not well-pled, their conclusory nature disentitled them to the presumption of truth). To withstand a motion to dismiss, a plaintiff need not include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. Rule 8 "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id*. at 678-79.

## I. Section 1983 Claims

Section 1983 provides a federal cause of action to a person whose rights "secured by the Constitution" are violated by an official acting "under color of [State law]." 42 U.S.C. § 1983. In this way, Section 1983 "creates a species of tort liability" where State actors violate federal constitutional rights. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) (citation omitted). "The first inquiry in any § 1983 suit is to isolate the precise constitutional violation" alleged. *Graham v. Connor*, 490 U.S. 386, 394 (1989) (internal quotation marks and citation omitted). "After pinpointing" the constitutional right at issue, "courts still must determine the elements of, and rules associated with, an action seeking damages for its violation." *Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017). Under Section 1983, "the general 'common law of torts'" bridges the gap between a constitutional right and the elements of a cause of action. *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1160 (6th Cir. 2021) (citation omitted).

### I.A. False Arrest and Malicious Prosecution (Counts I & II)

Plaintiff asserts claims for false arrest and malicious prosecution, alleging that he was seized and then prosecuted without probable cause and in violation of his Fourth Amendment rights. (ECF No. 11, ¶¶ 33–45, PageID #58–60.) Defendants argue that probable cause support his arrest and prosecution and is fatal to both claims. (ECF No. 17, PageID #111–12.)

False arrest and malicious prosecution are distinct common-law torts. False arrest applies to detention without legal process, while malicious prosecution applies to "confinement imposed pursuant to legal process," such as an arrest warrant or indictment. *Heck v. Humphrey*, 512 U.S. 477, 483 (1994). False arrest and malicious

prosecution each represent "specific versions of a general unreasonable-seizure claim alleging the same *constitutional* theory: that the officers seized . . . [the plaintiff] without probable cause." *Dibrell v. City of Knoxville*, 984 F.3d 1156, 1161 (6th Cir. 2021).

To establish a false arrest claim, a plaintiff must "prove that the arresting officer lacked probable cause to arrest the plaintiff." *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005). A showing of probable cause "provides a complete defense to a claim of false arrest." *Tlapanco v. Elges*, 969 F.3d 638, 652 (6th Cir. 2020) (quoting *Halasah v. City of Kirtland*, 574 F. App'x 624, 629 (6th Cir. 2014)). "In general, the existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995)).

Common-law malicious prosecution requires proving (1) a "suit or proceeding [that] was instituted without any probable cause," (2) "for a purpose other than bringing the defendant to justice," and (3) was terminated without conviction. *Thompson*, 596 U.S. at 44 (quoting T. Cooley, Law of Torts 181 (1880)). Additionally, the Fourth Amendment requires Plaintiff to "prove that the malicious prosecution resulted in a seizure." *Id*. at 43 n.2 (citing *Manuel*, 580 U.S. at 365–66). Also known as a claim for unreasonable seizure pursuant to legal process, *id.* at 42, this claim remedies the wrongful institution of legal process, *Sykes v. Anderson*, 625 F.3d 294, 308 (6th Cir. 2010) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). As an offense

separate and distinct from false arrest, malicious prosecution focuses on the initiation and maintenance of a prosecution. *Id.*

Determining probable cause depends on the "facts and circumstances" within the officers' knowledge, of which they had "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [plaintiff] had committed or was committing an offense." *Id.* (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). While officers "must show more than mere suspicion, the probable cause requirement does not require that they possess evidence sufficient to establish a prima facie case at trial, much less evidence sufficient to establish guilt beyond a reasonable doubt." *United States v. Strickland*, 144 F.3d 412, 415–16 (6th Cir. 1998).

Officers must take account of "both the inculpatory *and* exculpatory evidence" to determine probable cause under the totality of the circumstances. *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) (quoting *Gardenhire*, 205 F.3d at 318). In making this determination, officers cannot "ignore information which becomes available in the course of routine investigations." *Id.* (quoting *Fridley v. Horrighs*, 291 F.3d 867, 873 (6th Cir. 2002)). "[A] crime victim's accusation standing alone can establish probable cause." *Huffer v. Bogen*, 503 F. App'x 455, 460 (6th Cir. 2012) (quoting *Gardenhire*, 205 F.3d at 322). An arrest that does not result in a conviction "does not necessarily mean that the arrest itself was unlawful." *Giannini v. Erie Cnty., Ohio*, No. 3:15-cv-01379, 2016 WL 659894, at *3 (N.D. Ohio Feb. 18, 2016).

A grand jury indictment creates a presumption of probable cause. *King v. Harwood*, 852 F.3d 568, 586 (6th Cir. 2017). This presumption may be overcome by

evidence that a law enforcement officer "set a prosecution in motion" through false statements, false evidence, or misleading omissions that were material to the ultimate prosecution. *Id.* at 587–88.

Similarly, "a facially valid arrest warrant is normally sufficient to establish probable cause to arrest." *Chancellor v. Geelhood*, 168 F.4th 388, 401 (6th Cir. 2026). "As with a search warrant, an arrest warrant's presumption of validity gives way when an officer knowingly falsifies the materials supporting the magistrate's issuance of it." *Id.* (citing *Voyticky v. Village of Timberlake*, 412 F.3d 669, 677 n.4 (6th Cir. 2005)). Otherwise, "[a]n arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan,* 443 U.S. 137, 143–44 (1979)).

When it comes to probable cause in this case, Plaintiff acknowledges that he was arrested pursuant to a warrant, extradited, and prosecuted. (ECF No. 11, ¶¶ 16 & 18–19, PageID ##55–56.) And Ohio procedural rules mandate charging by indictment, unless Mr. Duncan waived that requirement. Ohio R. Crim. P. 7. The complaint does not allege or suggest that the arrest warrant was falsified or that Defendants obtained it by misleading the issuing judge. Plaintiff's core allegation is that police received and disregarded exonerating statements from Maria Bush's mother and sister. (*Id.*, ¶ 17 & 35, PageID #55 & 58.) However, the Bush family made these statements on July 13, 2024, after the arrest warrant was issued and executed. ( *Id.*, ¶¶ 7 & 16-17, PageID #54–55.) By that time, probable cause

presumably supported both arrest and prosecution. None of Plaintiff's allegations attempt to rebut that presumption. On these facts, construed in Plaintiff's favor, the claims for false arrest and malicious prosecution fail as a matter of law.

**I.B. Fabrication of Evidence (Count III)**

To support his claim for fabrication of evidence, Plaintiff alleges that "Defendants presented evidence to the Court that was fabricated." (ECF No. 11, ¶ 47, PageID #60.) Further, "Defendants knew the evidence was fabricated because . . . Ms. Bush's mother and Ms. Bush's sister indicated to them that the evidence was fabricated." (*Id.*, ¶ 46, PageID #60.) Plaintiff does not indicate what this fabricated evidence was. Defendants argue that this claim is insufficiently pled, particularly because Plaintiff fails to establish each official's personal involvement. (ECF No. 17, PageID #118)

To prevail on a claim for fabrication of evidence under the Fourteenth Amendment, a plaintiff must prove that "evidence is knowingly fabricated and a reasonable likelihood exists that the false evidence would have affected the decision of the jury." *Jackson v. City of Cleveland*, 925 F.3d 793, 815-816 (6th Cir. 2019) (quoting *Gregory v. City of Louisville*, 444 F.3d 725, 737 (6th Cir. 2006) (citing *Stemler v. City of Florence*, 126 F.3d 856, 872 (6th Cir. 1997))). Fabrication of evidence and withholding of evidence are distinct claims; withholding "involves the suppression of favorable evidence and [fabrication involves] the manufacture of damaging evidence." *Mills v. Barnard*, 869 F.3d 473, 485 (6th Cir. 2017).

Setting aside the conclusory language of "evidence . . . was fabricated," Plaintiff does not allege any facts to suggest that Defendants or Maria Bush

manufactured evidence against him. Assuming that evidence was fabricated, Plaintiff also fails to establish that any Defendant knew about it. Although he claims that "Defendants knew" (ECF No. 11, ¶46, PageID #60), he appears to base this allegation on the fact that, "on or about July 13, 202[4], Ms. Bush's mother and Ms. Bush's sister went to the police department and indicated to them that Plaintiff had legal custody of Minor, and that Ms. Bush had given him permission to take Minor." (*Id.*, ¶17, PageID #55.) Plaintiff does not indicate which police department the Bushes visited or where. Additionally, Plaintiff fails to explain how one might reasonably infer that *any* named Defendant was aware of these facts earlier. In sum, the complaint fails to allege that evidence was fabricated or that Defendants had knew that it was. Therefore, Defendants are entitled to judgment as a matter of law.

**I.C. Deliberate Indifference (Count V)**

Plaintiff's claim for deliberate indifference centers on the premise that, after receiving an exculpatory statement from Maria Bush's mother and sister, "Defendants acted with deliberate indifference by failing to take immediate remedial action to secure Plaintiff's release from pretrial detention." (ECF No. 11, ¶ 67, PageID #64.) Defendants do not engage with this argument.

Section 1983 deliberate indifference claims follow a two-prong framework established in *Farmer v. Brennan*, 511 U.S. 825, 114 (1994). In principle, this standard seeks to ensure "humane conditions of confinement" and that "inmates receive adequate food, clothing, shelter, and medical care," as well as reasonable measures to guarantee their safety. *Id* at 832.

Under the first prong, an alleged constitutional deprivation "must be, objectively, sufficiently serious" and "result in the denial of the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834 (internal quotations omitted). In cases alleging a failure to prevent harm, the plaintiff "must show that he is incarcerated under conditions posing a substantial risk of serious harm." *Id.* This showing is frequently made in the context of disputes over adequate medical care or whether an inmate was sufficiently protected from prison violence. *See generally, e.g.*, *id.; Howell v. NaphCare, Inc.*, 67 F.4th 302 (6th Cir. 2023).

For the second prong, the "prison official must have a "'sufficiently culpable state of mind.'" *Farmer*, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). In a case concerning a pretrial detainee, this requires a showing that each defendant "acted deliberately [and] also recklessly 'in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known.'" *Brawner v. Scott Cnty.*, 14 F.4th 585, 596 (6th Cir. 2021) (quoting *Farmer*, 511 U.S. at 836).

Plaintiff's claim fails to satisfy either prong. First, Plaintiff does not allege that his incarceration placed him in substantial risk of serious harm or denied him "the minimal civilized measures of life's necessities." *Farmer*, 511 U.S. at 834. Second, he does not establish that any Defendant knew or should have known that he was facing "an unjustifiably high risk of harm." *Brawner*, 14 F.4th at 596. To the extent the complaint bases this claim on failing to drop the charges sooner due to deliberate indifference, it falls to the Sixth Circuit to extend the cause of action to

such a claim. Even if it did, the complaint contains no allegation that Defendants failed to act with diligence. For all these reasons, his claim may not proceed.

### I.D. *Monell* Claims (Count IV)

Plaintiff asserts a *Monell* claim against the City of Maple Heights and Cuyahoga County, alleging that their employees were "inadequately trained" and that these entities have "a policy and/or custom" of enhancing felony charges without supporting probable cause, particularly in cases involving extradition. (ECF No. 11, ¶¶ 53-61, PageID #61-63.) Specifically, he alleges that Officers Fronzaglio and Sergeant Frazier "were inadequately trained on the probable cause standard and the [kidnapping] statute" (*id.,* ¶ 55, PageID #61) as well as "on the policies related to gathering evidence and interviewing witnesses" (*id.,* ¶ 56, PageID #62). Similarly, he alleges that the assistant prosecutors, Mr. Kosko and Ms. Brooks, "were inadequately trained on the probable cause standard and the [kidnapping] statute." (*Id.*, ¶ 58, PageID #62.) Defendants move to dismiss this claim, arguing that it is not adequately pled. (ECF No. 17, PageID #115–17.)

To prevail on a *Monell* claim under Section 1983, a plaintiff must demonstrate a constitutional violation and a policy, practice, or custom that causes the alleged constitutional violation. *Johnson v. Hardin Cnty.*, 908 F.2d 1280, 1285 (6th Cir. 1990) (citing *Monell*, 436 U.S. at 690–91). Under Section 1983, a political subdivision cannot be held vicariously liable on a theory of *respondeat superior* for a violation of an individual's constitutional rights that its officers, employees, or agents commit. *Thomas v. City of Chattanooga*, 398 F.3d 426, 432–33 (6th Cir. 2005) (citing *Monell*, 436 U.S. at 694). Instead, a municipality has liability for a policy or practice that

caused a constitutional injury "through its deliberate conduct." *Board of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404–05 (1997). Therefore, without an underlying constitutional violation, "[t]here can be no liability under *Monell*." *Robertson v. Lucas*, 753 F.3d 606, 622 (6th Cir. 2014) (citing *Scott v. Clay Cnty., Tenn.*, 205 F.3d 867, 879 (6th Cir. 2000)); *Heyerman v. City of* Calhoun, 680 F.3d 642, 648 (6th Cir. 2012). For this reason, Defendants are entitled to judgment as a matter of law on this claim as well.

## II. State Claims (Counts VI–IX)

In response to Defendant's motion for dismissal, Plaintiff "concedes that his state law claim for false arrest is untimely and does not oppose dismissal of only that claim." (ECF No. 21, PageID #153.) Because the parties agree on this disposition, the Court dismisses that claim (Count VI).

Plaintiff's remaining claims for malicious prosecution, intentional infliction of emotional distress, and abuse of process are each based on Ohio law. (ECF No. 11, PageID #65–68.) The Court has supplemental jurisdiction over these State-law claims pursuant to 28 U.S.C. § 1367. Under federal law, "the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." 28 U.S.C. § 1367(a). This grant of jurisdiction brings all claims arising from a common nucleus of operative fact before the Court. *Soehnlen v. Fleet Owners Ins. Fund*, 844 F.3d 576, 588 (6th Cir. 2016).

Even then, a court "may decline to exercise supplemental jurisdiction" in certain circumstances. 28 U.S.C. § 1367(c). Supplemental jurisdiction "is a doctrine

of discretion." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 726 (1966). To determine whether to exercise supplemental jurisdiction, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity[.]" *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988); *see also James v. Hampton*, 592 F. App'x 449, 462-63 (6th Cir. 2015) (quoting *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1882 (6th Cir. 1993)). Section 1367(c)(3) provides that a district court may decline to exercise supplemental jurisdiction where "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

Because the Court dismisses all of Plaintiff's federal claims, the Court may, in its discretion, either retain jurisdiction over Plaintiffs' State-law claims and proceed on the merits, *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639-40 (2009), or decline jurisdiction and dismiss the complaint without prejudice to Plaintiffs' right to pursue the remaining claims in State court. *See* 28 U.S.C. § 1367(c)(3). "[G]enerally 'when all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Packard v. Farmers Ins. Co. of Columbus*, 423 F. App'x 580, 585 (6th Cir. 2011) (quoting *Musson Theatrical v. Fed. Express Corp.*, 89 F.3d 1244, 1254-55 (6th Cir. 1996)); *see also Juergensen v. Midland Funding, LLC*, No. 5:18-cv-1825, 2018 WL 5923707, at *2 (N.D. Ohio Nov. 13, 2018).

Based on its review of the record, the Court declines to exercise its discretion to retain jurisdiction over Plaintiffs' State-law claims. Therefore, the Court dismisses those claims without prejudice, other than Plaintiff's claim for false arrest.

## CONCLUSION

For all these reasons, the Court **GRANTS IN PART** Defendants' motion to dismiss (ECF No. 17). The Court **DISMISSES** Plaintiff's federal claims and his State-law claim for false arrest in Count VI and **DISMISSES WITHOUT PREJUDICE** his remaining State-law claims.

**SO ORDERED.**

Dated: August 21, 2026

J. Philip Calabrese
United States District Judge
Northern District of Ohio